UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                Chapter 11

CENTRAL BEEF IND., LLC                             Case No. 8:16-bk-2366

        Debtor.

*Emergency Hearing Requested*

_____/

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING REPLACEMENT LIENS, AND (C) AUTHORIZING USE OF EXCESS FUNDS TO PAY DOWN SECURED LINE OF CREDIT PURSUANT TO SECTIONS 105(a), 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**STATEMENT OF RELIEF REQUESTED**

The Debtor seeks authority to use cash collateral to pay trust fund claims under the Packers & Stockyards Act, to fund operating expenses and costs of administration in these Chapter 11 cases, to provide replacement liens as described below as adequate protection for the interests in any cash collateral, and, ultimately (as cash accumulates) to pay down the BankUnited, N.A. line of credit. BankUnited, N.A. asserts security interests in certain items of cash collateral held by the Debtor. Bridge Capital Leasing, Inc. may assert some interest in cash collateral as well by virtue of cross-collateralization agreements.

CENTRAL BEEF IND., LLC ("**Central Beef**") respectfully requests the entry of interim and final orders approving its use of cash collateral. In support of this motion, the Debtor respectfully represents as follows:

**Jurisdiction and Venue**

1.    This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. The subject matter of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C §§ 1408 and 1409.

2.     The statutory predicates for the relief requested herein are Sections 105(a), 361, 363, 541, and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

### Background

3.     On March 21, 2016 (the "**Petition Date**"), Central Beef filed a petition seeking relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). Two related companies, 5C OF CENTRAL FLORIDA, LLLP. ("**5C**") and CBI MANAGEMENT/ADMINISTRATION, LLC ("**CBI**") (collectively with Central Beef, the "**Debtors**"), are expected to file petitions as well. The Debtors will be filing a motion seeking joint administration of the cases for procedural purposes only.

4.     Central Beef is a Florida limited liability company established in 1999. For many years, it has been the largest purchaser of cattle and the largest beef packing house in the State of Florida, the second largest in the Southeast, and the 18th largest in the country, with annual revenues reaching $180 million in 2013. Central Beef is the primary operating company of the Debtors and has the urgent need to pay for cattle that have been purchased and to pay payroll and other operating expenses.

### Description of Indebtedness

5.     Prior to the Petition Date, BankUnited extended two loans to the Debtors: (a) a real estate loan in the amount of $7,040,000.00 (the "**Real Estate Loan**") secured by the real estate owned by 5C in Center Hill, Florida and the improvements located thereon, and (b) a $7,500,000.00 revolving line of credit (the "**Revolving Loan**") to the Debtors secured by all of the personal property of the Debtor, consisting primarily of accounts receivable and inventory. C5 maintains a segregated debt service reserve account at BankUnited that serves as additional

collateral for BankUnited and that is used to make monthly payments on the term loans to BankUnited and Bridge Capital Leasing, Inc. ("**Bridge Capital**") and to pay accrued interest on the Revolving Loan. The current balance of the debt service reserve account is $750,000. As stated above, in March of 2015, the Revolving Loan was reduced to $5,000,000.00. The approximate current principal balance owed on the Real Estate Loan is $5.7 million. Monthly payments on the Real Estate Loan are current.

6. The current amount owing under the Revolving Loan is approximately $3,524,000. There are unpaid amounts due to sellers of cattle in the amount of $1,030,000. The Revolving Loan is secured by Central Beef's receivables, cash on hand, and inventory. All of Central Beef's receivables are from the sale of meat or livestock products, and all receivables generated in the future will be from sales of meat and livestock products derived from inventory of cattle on hand. As to all of such receivables, the cattle sellers have a senior trust fund interest to the interests of BankUnited. *In re Gotham Provision Co., Inc.*, 669 F.2d 1000 (5th Cir. 1982). The value, <u>net</u> of payment of the claims of sellers of cattle and the costs of processing, shipping and selling current inventory, exceeds $5 million. Accordingly, within the next eight weeks or less, as reflected by the budget, all trust fund claims and the entire amount owed on the Revolving Loan will be paid in full if Central Beef is authorized to do so, and Central Beef will have in excess of $3 million in cash.

7. Bridge Capital, an affiliate of BankUnited, also loaned $5,460,000.00 to the Debtors secured by machinery and equipment owned by the Debtors (the "**Equipment Loan**"). The current balance of the Equipment Loan is $2.9 million.

**Relief Requested and Grounds for Relief**

8. Central Beef seeks the entry of an order, the proposed form of which is attached hereto as **Exhibit A**, authorizing the use of cash collateral substantially in accordance a budget attached hereto as **Exhibit B** (the "**Budget**") and for purposes which include the following:

   (a) payment of pre-petition and post-petition invoices or amounts otherwise due from Central Beef's purchase of cattle;

   (b) care, maintenance, and preservation of the assets utilized by Central Beef in operating its business;

   (c) payment of necessary payroll, rent, suppliers, utilities, and other business expenses;

   (d) other payments necessary to sustain continued business operations; and

   (e) costs of administration in these Chapter 11 cases.

9. Central Beef requests authority to use cash collateral immediately to pay operating expenses necessary to continue the operation of its business, to maximize the return on its assets, and to otherwise avoid irreparable harm and injury to its business and its estate.

10. There is insufficient time for a final evidentiary hearing, as required by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, to be held before Central Beef must use cash collateral. If this Motion is not considered on an expedited basis and if Central Beef is denied the ability to immediately use cash collateral, there will be direct and immediate harm to the continuing operation of the Debtor's business. The inability of Central Beef to pay its ordinary business expenses will jeopardize its ability to process and ship meat and livestock products, causing irreparable injury to its chances for reorganization and adversely impacting the value of its assets. Failure to pay the claims of cattle suppliers may have adverse consequences under the Packers and Stockyards Act, as further set forth in a companion motion. Rule

4001(b)(2) of the Federal Rules of Bankruptcy Procedure authorizes this Court to hold an immediate preliminary hearing on this Motion.

11. BankUnited and Bridge Finance are adequately protected by an equity cushion in their collateral of more than $10 million. In addition, in exchange for Central Beef's ability to use cash collateral in the operation of its business, Central Beef proposes to grant, as adequate protection, to BankUnited and Bridge Capital a replacement lien equal in extent, validity, and priority to the lien held by them as of the Petition Date.

### Notice

12. No trustee or examiner has been appointed in these cases and no official committees have yet been appointed pursuant to Section 1102 of the Bankruptcy Code. Notice of this Motion will be given to the BankUnited loan officer, Scott Milchuk, by telephone call and via email from the Debtor's industry consultant, William Taylor. Notice of this Motion has also been given: (i) by the Court's CM/ECF system to the Office of the United States Trustee, and (ii) by United States first class mail to all known secured creditors of the Debtors, the twenty (20) largest unsecured creditors of the Debtors, and certain other parties listed on the attached Certificate of Service. Central Beef submits that, given the emergency nature of the relief requested herein, no other or further notice need be given.

### Basis for Emergency Relief

13. The facts previously set out herein clearly justify an immediate hearing on this motion. If Central Beef cannot utilize cash collateral, it will be irreparably harmed.

WHEREFORE, the Debtor respectfully requests that this Court enter an order: (a) granting this motion; (b) authorizing the interim use of cash collateral; (c) scheduling a final cash

collateral hearing in accordance with Bankruptcy Rule 4001(b)(2); and (d) providing such other and further relief as may be just and proper.

Dated this 21st day of March, 2016.

/s/  Harley E. Riedel
Harley E. Riedel
Florida Bar No. 183628
Matthew B. Hale
Florida Bar No. 110600
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida   33602
Telephone:  (813) 229-0144
Fax:  (813) 229-1811
Emails: hriedel@srbp.com; mhale@srbp.com
Attorneys for Debtors

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct of the foregoing *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure, with attachments,* has been furnished on this 21st day of March, 2016, by either  the Court's CM/ECF system, U.S. Mail, or by Email to:

Office of the United States Trustee
20 Largest Unsecured Creditors

BankUnited, N.A. and Bridge Capital Leasing, Inc.
7765 NW 148 Street
Miami Lakes, Florida  33016
Email: smilchuk@bankunited.com


/s/  Harley E. Riedel
Harley E. Riedel, Florida Bar No. 183628

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11

CENTRAL BEEF IND., LLC                              Case No. 8:16-bk-02366

        Debtor.

_____/

**INTERIM ORDER ON DEBTOR'S EMERGENCY MOTION FOR
ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH
COLLATERAL AND GRANTING REPLACEMENT LIENS PURSUANT TO
SECTIONS 105(a), 361, 363, 541 AND 552 OF THE BANKRUPTCY CODE
AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

THIS CASE came before the Court for hearing on _____, 2016, at _____ ___.m. for consideration of the *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 55 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure* (Doc. No. _____) (the "**Motion**"). The Motion seeks

the entry of interim and final orders authorizing the Debtors to use "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code.

The Court finds that due and sufficient notice of the Motion and the Hearing was provided to: (i) the Office of the United States Trustee for the Middle District of Florida, (ii) BankUnited, N.A. ("**BankUnited**"), (iii) Bridge Capital Leasing, Inc. ("**Bridge Capital**") (BankUnited and together with Bridge Capital, collectively, the "**Lenders**"), (iv) all other known secured creditors of the Debtors, and (v) the twenty (20) largest unsecured creditors of the Debtor and that no other or further notice is necessary. The Court considered the Motion, together with the record and the arguments of counsel at the Hearing, and it appearing that the use of Cash Collateral to the extent provided herein is necessary on an interim basis in order to avoid irreparable harm to the Debtor, and for the reasons announced on the record at the Hearing which shall constitute the decision of the Court, it is

**ORDERED**:

1. Notice of the Motion and the Hearing on the Motion was adequate and appropriate in the current circumstances of these jointly administered Chapter 11 cases as contemplated by 11 U.S.C. §102(a) and Fed. R. Bankr. P. 4001(b)(2).

2. The Motion is granted on an interim basis pending a further hearing to be conducted by the Court on _____ **2016, at _____ ___.m.**

3. All persons and entities owing monies to the Debtor are authorized and directed to pay the monies to the Debtor, without setoff, which sums shall upon collection by the Debtor constitute Cash Collateral (as that term is defined in Section 363(a) of the Bankruptcy Code).

4. The Debtor is authorized to use Cash Collateral including, without limitation, cash, deposit accounts, accounts receivable, proceeds from the lease of real property, and

proceeds from farming operations including the sale of produce in accordance with the budget (the "**Budget**"), a copy of which is attached hereto as **Exhibit A**, so long as the aggregate of all expenses for each week do not exceed the amount in the Budget by more than ten percent (10%) for any such week on a cumulative basis (the "**Variance**"). Notwithstanding the foregoing, subject to the provisions of paragraph ten of this Order, expenditures in excess of the Variance or not on the Budget will not be deemed to be unauthorized use of Cash Collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure.

5. The Debtor is authorized to provide adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to the Lenders pursuant to the terms and conditions of this Interim Order. As adequate protection with respect to the Lenders' interests in the Cash Collateral, the Lenders are granted replacement liens (the "**Replacement Liens**") in and upon all of the categories and types of collateral in which they held a security interest and lien as of the Petition Date to the same extent, validity and priority that the Lenders held as of the Petition Date.

6. The Debtor shall maintain insurance coverage for the Collateral in accordance with the obligations under the loan and security documents.

7. This Order is not and shall not be construed as determinative as to whether or not any creditor has a valid lien on any property of the Debtor or its estate. This Order is not and shall not be construed as determinative as to the extent or amount of any secured claim associated with any such lien.

8. This Order is without prejudice to the Debtor's right to challenge the extent, validity, or priority of any lien or claim of any creditor, and is likewise without prejudice to the

right of any creditor to seek additional relief concerning Cash Collateral by subsequent motion and nothing contained in this Order shall be deemed to constitute a waiver of any party's rights.

9. This Order is without prejudice to the Debtor's rights to seek authority by separate motion to pay monies in excess of the amounts set forth in the Budget.

10. It shall be an event of default if the Debtor exceeds the Variance without the prior written consent of the Lenders, which consent shall not be unreasonably withheld; provided, however, in the event of a default, the Debtor's authority to use Cash Collateral shall continue until the Lender(s) obtains an order by appropriate motion after notice and hearing requiring the Debtor to cease using Cash Collateral.

11. In accordance with Rule 4001 of the Bankruptcy Rules, the Court finds the Debtor's authorization to use Cash Collateral pursuant to this Order is necessary to avoid immediate and irreparable harm to the Debtor's estate.

12. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

Attorney Harley E. Riedel is directed to serve a copy of this order on interested parties who are non-ECF users and file a proof of service within 3 days of entry of the order.

# EXHIBIT B

Central Beef - Expense Forecast

| Week beginning | 21-Mar<br>1 | 28-Mar<br>2 | 4-Apr<br>3 | 11-Apr<br>4 | 18-Apr<br>5 | 25-Apr<br>6 | 2-May<br>7 | 7-May<br>8 | Ongoing |
|---|---|---|---|---|---|---|---|---|---|
| **Operations** | | | | | | | | | |
| prior payrolls (ops-$125,mgt-$70) | $ 130,000 | | | | | | | | |
| Shipping | $ 7,500 | $ 3,000 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | 1,500 |
| major clean up | $ 6,000 | $ 3,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Grinding | | | | | | | | | |
| management | $ 1,500 | | | | | | | | |
| USDA inspectors | $ 3,000 | | | | | | | | |
| employees | $ 6,000 | | | | | | | | |
| Fab | | | | | | | | | |
| employees | $ 4,000 | $ 4,000 | $ 2,000 | $ 2,000 | $ - | $ - | $ - | $ - | $ - |
| blood lab | $ 1,000 | $ 1,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| QC | $ 2,000 | $ 2,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| cattle buying | $ 5,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| outside storage | $ 8,000 | $ 8,000 | $ 7,000 | $ 5,000 | $ 4,000 | $ 3,000 | $ 2,000 | $ 1,000 | $ 500 |
| freight out | $ 20,000 | $ 10,000 | $ 5,000 | $ 2,000 | 1,000 | | | | |
| **Admin** | | | | | | | | | |
| Management | $ 12,000 | $ 12,000 | $ 12,000 | $ 12,000 | $ 9,400 | $ 9,400 | $ 9,400 | $ 9,400 | 7,500 |
| Work out consultant | | | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | $ 3,750 | 3,750 |
| financial management | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 4,500 | 2,500 |
| bookeeping - a/r -a/p-warehouse | $ 6,000 | $ 4,500 | $ 3,000 | $ 2,500 | $ 2,500 | $ 2,500 | $ 1,500 | $ 1,500 | 1,500 |
| other (phone,computers,etc) | $ 3,750 | $ 750 | $ 750 | $ 250 | $ 9,400 | $ 250 | $ 250 | $ 250 | $ - |
| HR | $ 3,750 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | 2,000 |
| Commissions | $ 9,000 | $ 7,500 | $ 6,000 | $ 4,500 | $ 3,000 | $ 1,500 | $ 1,000 | 1,000 | |
| **Maintenance** | | | | | | | | | |
| property & equipment wages | $ 8,000 | $ 6,000 | $ 4,500 | $ 4,500 | $ 4,500 | $ 4,500 | $ 4,500 | $ 4,500 | 4,500 |
| supplies | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 200 | $ 200 | $ 200 | 200 |
| forklifts | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ - | $ - | $ - | $ - | $ - |
| refrigeration | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ - | $ - | $ - | $ - | $ - |
| waste removal | $ 3,000 | $ 1,000 | $ 1,000 | $ - | $ - | $ - | $ - | $ - | $ - |
| outside services - security | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | 1,250 |
| **Utilities** | | | | | | | | | |
| electric | $ - | $ - | $ 80,000 | $ - | $ - | $ - | $ 40,000 | $ - | $ - |
| Other - propane | $ 6,000 | $ 3,000 | $ 2,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | 1,000 |
| **TOTAL** | $ 259,000 | $ 81,250 | $ 144,000 | $ 54,500 | $ 51,550 | $ 38,100 | $ 75,600 | $ 33,100 | $ 26,200 |

**Cash Flow**
**Exhibit to Cash Collateral Motion**

|  | Week 1 | Week 2 | Weeks 3 – 8 |
|---|---|---|---|
| Beginning Cash | $0 | $961,000 | $4,130,000 |
| Collections | 2,000,000 | 3,500,000 | 3,915,000 |
| Total | $2,000,000 | $4,461,000 | $8,045,000 |
|  |  |  |  |
| Expenses: |  |  |  |
|    Trust Fund Cattle | $780,000 | $250,000 | $150,000 |
|    Operating Expenses | 259,000 | 81,000 | 525,000 |
| Total | $1,039,000 | $331,000 | $675,000 |
|  |  |  |  |
| Cash Avail. | $961,000 | $4,130,000 | $7,370,000 |
|  |  |  |  |
| Line of Credit | $3,524,000 |  |  |