UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                          Chapter   11

CENTRAL BEEF IND., LLC                          Case No. 8:16-bk-2366

      Debtor.

                              *Emergency Relief Requested*

_____/

### EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING PAYMENT OF CASH SELLERS OF LIVESTOCK FROM STATUTORY TRUST FUNDS PURSUANT TO SECTION 196 OF THE PACKERS & STOCKYARDS ACT, 7 U.S.C. § 196, AND OTHER APPLICABLE LAW

     CENTRAL BEEF IND., LLC, as debtor and debtor in possession (the "**Debtor**"), by and through its undersigned attorneys, hereby files this Emergency Motion for Entry of an Order Authorizing Payment of Cash Sellers of Livestock from Statutory Trust Funds Pursuant to Section 196 of the Packers and Stockyards Act, 7 U.S.C. § 196 and Other Applicable Law (the "**Motion**"). In support of this Motion, the Debtor would show:

### Jurisdiction and Venue

     1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein include 7 U.S.C. § 181 *et seq.* and 11 U.S.C. § 105(a) and § 541(d).

**Background**

2.      On March 21, 2016 (the "**Petition Date**"), the Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

3.      The Debtor continues to operate its business and manage its property as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4.      The Debtor operates a beef processing and packing facility and historically has purchased nearly 80% of the cattle sold to slaughter in the state of Florida, in addition to cattle purchased out of state, from various livestock sellers.

5.      The Debtor holds a USDA Establishment Number of 00096, which its predecessor acquired in the 1940s.  The license is a valuable asset in the hands of the Debtor or any successor-in-interest.  It is important, therefore, that the Debtor remain in compliance with all USDA guidelines.

6.      The Debtor historically purchased cattle for processing one of two ways.  Under the first method, the Debtor would attend one or more cattle auctions each week held in various locations throughout Florida and the southeast, at which the Debtor would bid on and purchase cattle ("**Auction Cattle**").  Under the second method, the Debtor would purchase cattle through "grade and yield" sales.  "Grade and yield" terms allow the Debtor to receive, slaughter, and chill the cattle prior to weighing and determining the yield.  The Debtor would then pay the seller based on the yield from cattle sold by the seller ("**Rail Cattle**").  In either event, the Debtor then sells the processed meat and livestock byproducts to purchasers, generating accounts receivable which the Debtor then collects (the "**Accounts Receivable**").

7.      The Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.*, and Florida state laws, discussed in more detail below, require the Debtor to pay for sales of both Auction Cattle and Rail

Cattle in a short time frame and impose a trust on the proceeds from the collection of funds from the sale of meat and livestock products.  For Auction Cattle, payment is required by the end of the next business day after purchase of the cattle.  *See* 7 U.S.C. § 228b.  Payment for Rail Cattle is required the following business day after slaughter, when the grade and yield is determined.  *See id.*

8.      The Debtor purchased its last Auction Cattle on March 14, 2016.  Checks, drawn upon the Debtor's operating bank account (the "**BankUnited Account**") at BankUnited, N.A. ("**BankUnited**") have been mailed to all sellers of Auction Cattle purchased by the Debtor, and most have been presented for payment and actually paid.  The Debtor determined "grade and yield" for the last Rail Cattle delivered to the Debtor on March 17, 2016.  The Debtor has timely drawn and mailed the checks those for last Rail Cattle.

9.      Although payment for all Auction Cattle and Rail Cattle purchases has been timely delivered by mail, the Debtor believes, based upon its "real-time" review of activity at the BankUnited Account, some checks issued in payment remain outstanding; i.e., these checks have not been presented for payment by the payee at the Debtor's bank (the "**Outstanding Cattle Checks**").  According to this review, the Outstanding Cattle Checks total $1,030,698.89 as of March 21, 2016.  A list of the payee, amount, and check date for the Outstanding Cattle Checks is attached as **Exhibit A**.[1]

10.      All cattle sellers owed payment by the Debtor will be referred to as the "**Cattle Sellers**."

---

[1] The attached Exhibit A lists checks outstanding for all cattle-related purchases, including feed, commissions, and freight charges relating the cattle purchases.  Exhibit A contains notations next to some line items indicating that a certain charge was incurred for something *other than* the purchase of livestock (e.g., "CM" for commission; "FGT" for freight).  Thus, the Debtor has deducted these ancillary charges from the amounts sought to be paid by this Motion.  These other payables will be paid in full through a chapter 11 plan, a plan that the Debtor believes will pay all valid claims in full.

11.     As noted above, the BankUnited Account is the Debtor's primary operating checking account.  In addition, BankUnited extended prepetition credit to the Debtor in the form of a revolving line of credit with a limit of $5 million (the "**LOC**").  The loan transactions with BankUnited are further described in the Case Management Summary and Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Granting Replacement Liens Pursuant to Sections 105(a), 361, 363, 541 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

12.     BankUnited's lien extends to the Debtor's interest in accounts receivable and inventory.  Collections of Accounts Receivable are deposited into the BankUnited Account. BankUnited sweeps the BankUnited Account daily.  The Debtor's, and hence BankUnited's, interest in the proceeds of Accounts receivable is junior to and subordinate to the trust fund rights of the Cattle Sellers in such funds.  Indeed, such funds are not "property of the estate" within the meaning of 11 U.S.C. § 541.

13.     As of the date of this motion, March 18, 2016, the immediately collectable Accounts Receivable total approximately $5 million.[2]  The Debtor's accounts receivable historically has enjoyed an excellent collection rate and a short collection period.

14.     The Debtor will continue to generate accounts receivable as remaining inventory is shipped.  It is expected that these forthcoming accounts receivable may exceed $4 million.  As the Debtor collects on existing and new Accounts Receivable, the Debtor's cash reserves will increase significantly.

<u>**Relief Requested and Memorandum of Law**</u>

The Debtor seeks authority to allow payment to clear on the Outstanding Cattle Checks.

---

[2] Quantum Foods, who owes approximately $493,000 to the Debtor, is in bankruptcy; this receivable has been excluded from the $5 million total.

The Debtor also seeks an order prohibiting BankUnited from dishonoring the Outstanding Cattle Checks or other payments made to the Cattle Sellers because, under federal law discussed below, the funds on deposit in the BankUnited Account are held in trust for the benefit of the Cattle Sellers.  As funds held in trust, these funds are not property estate.

### *The Packers and Stockyards Act Applies*

The Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.* (the "**PASA**"), was amended in 1976 " to provide some future protection for livestock sellers against the type of serious financial loss that cattlemen experienced when some major meat packers went bankrupt in the early 1970's." *In re Gotham Provision Co., Inc.*, 669 F.2d 1000, 1008 (5th Cir. 1982).  To this end, § 196 of the PASA provides:

> All livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom, shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers.

7 U.S.C. § 196(b).

Courts hold that the PASA's trust provision applies to transactions which satisfy six elements:

> (1) The commodities sold are "livestock," as defined in [the PASA];
>
> (2) The Purchase of the livestock is a "packer," as defined in [the PASA];
>
> (3) The transaction is a "cash sale";
>
> (4) The cash sellers have not received full payment for their livestock;
>
> (5) The packer in question makes average annual purchases of more than $500,000; and
>
> (6) The cash sellers have preserved the trust within the required period by giving notice to the packer and by filing that notice with the Secretary of Agriculture.

*In re CFP Liquidating Estate*, 405 B.R. 694 (Bankr. D. Del. 2009) (citing *Gotham Provision*, 669 B.R. at 1004).  The Debtor's purchases of cattle from the Cattle Sellers satisfy these elements.

First, the definition of "livestock" includes cattle.  7 U.S.C. § 182(4).  Second, a "packer" is "any person any person engaged in the business . . . of buying livestock in commerce for purposes of slaughter, or . . . of manufacturing or preparing meats or meat food products for sale or shipment in commerce."  7 U.S.C. § 191.  The Transactions at issue here satisfy both of these first two requirements:  the Cattle Sellers sell cattle, and the Debtor clearly meets the definition of "packer."

Third, a "cash sale means a sale in which the seller does not expressly extend credit to the buyer." 7 U.S.C. § 196(c).  All sales are considered "cash sales" unless the seller and packer agree, in writing and in conformance with specific regulations, *see* 9 C.F.R. § 201.200, that the seller is waiving the trust provisions.  *See In re Coop de Consumidores del Noroeste*, 464 B.R. 525, 538 (Bankr. D.P.R. 2012) ("[T]he sale of livestock constitutes a "cash sale" unless the seller has signed a credit arrangement in conformity with 9 C.F.R. § 201.200 indicating that the same is a credit sale and, thus, waiving its statutory trust rights."); *In re G & L Packing Co., Inc.*, 20 B.R. 789 (Bankr. N.D.N.Y. 1982); *see also Gotham Provision*, 669 B.R. at 1006–07.  All cattle purchased by the Debtor from the Cattle Sellers were "cash sales" within the meaning of the PASA.

Fourth, the Cattle Sellers have not received full payment.  The Outstanding Cattle Checks have not yet cleared or been paid by the drawee, BankUnited.

Fifth, the Debtor makes far more than $500,000 in annual cattle purchases.  Indeed, the cattle payments owed on the Outstanding Cattle Checks alone account for approximately $1 million in cattle purchases.

The sixth and last element, the Cattle Sellers' preservation of their trust rights under the

PASA, is not applicable because all Cattle Sellers have automatically preserved their rights.[3]

Because all six elements identified above are met, the transactions with the Cattle Sellers fall under the PASA. Accordingly, the Debtor holds all "receivables or proceeds from meat, meat food products, or livestock products" in trust for the Cattle Sellers' benefit.

### Trust Claimants have Superior Right to the Accounts Receivable over BankUnited

Because the transactions with the Cattle Sellers fall under the PASA, the Cattle Sellers' statutory trust rights supersede any lien rights BankUnited may have over the Accounts Receivable and any collection therefrom. If the PASA conditions are satisfied, "a statutory trust is automatically created upon delivery of the livestock to the purchaser." *In re CFP Liquidating Estate*, 405 B.R. 694, 697 (Bankr. D. Del. 2009).

Because a trust is created, the trust property is not property of the estate pursuant to § 541(d) of the Bankruptcy Code, which excludes property held in trust from the definition of property of the estate. 11 U.S.C. § 541(d); *see CFP Liquidating Estate*, 405 B.R. at 697. As such, the funds the Debtor seeks to use to pay the Cattle Sellers are not property of the estate, and the payment of the Cattle Sellers does not run afoul of the typical bar against paying pre-petition debt with estate funds.

To establish a trust *res*, no specific tracing of the proceeds of a cattle seller's livestock is required. "Congress did not intend that livestock producers perform the almost impossible task of tracing their products into specific receivables." *In re Gotham Provision Co., Inc.*, 669 F.2d 1000,

---

[3] Section 196 of the PASA requires trust claimants to "preserve" his trust rights by providing written notice to the packer and by filing such a notice with the state. *See* 7 U.S.C. § 196(b). The provision explicitly states only that the seller will "*lose* the benefit of such trust" if it fails to file the notice within the required time frames. *See id.* (emphasis added). Thus, the Cattle Sellers presently are beneficiaries of their statutory trust rights and can only *lose* their trust rights in the event they fail to file the required notice. The Debtor seeks to simply pay the Cattle Sellers with the trust funds before the notice provisions become operative.

1010 (5th Cir. 1982).  As the court stated in *Gotham*:

> [W]here there is a commingling of livestock products such that it is impossible to determine whether a packer's inventories and accounts receivable have been derived from livestock purchased by the packer in a cash sale or credit sale, all of the packer's inventories, accounts receivable and proceeds attributable to livestock sales are subject to the § 206 trust to the extent of the amount owed to the unpaid cash seller. The only burden on the unpaid cash sellers in such a case is to prove the balance due to them and the existence of a floating pool of commingled inventories of livestock products, accounts receivables and proceeds derived from cash and credit livestock sales.

*Id.* at 1011–12.

Here, the Accounts Receivable are commingled: they contain receivables from sales of paid-for cattle, and sales relating to the unpaid Cattle Sellers.  Thus, the Accounts Receivable and any proceeds which may flow through the BankUnited Account are subject to a statutory trust for the benefit of the Cattle Sellers.

Moreover, BankUnited is not permitted to set off any loan balance owed to it with any of the funds in the BankUnited Account, at least until the Cattle Sellers have been paid in full.  The court in *In re Agriprocessors, Inc.*, 2009 WL 290475 (Bankr. N.D. Iowa 2009), directly addressed the issue.  The court reasoned that the trust funds fell outside the bank's setoff rights because the bank was on notice of the livestock sellers' trust rights in the funds.  *See id.* at *2.  Indeed, *Gotham*, in considering the tracing issue discussed *supra*, held that the bank there "had constructive notice of the trust because a federal statute created the trust." *Gotham*, 669 F.2d at 1011.

Courts have even held banks directly liable to trust claimants under the PASA if the bank set off debt owed by the packer against trust funds.  In *In re G & L Packing Co., Inc.*, 20 B.R. 789, 809 (Bankr. N.D.N.Y. 1982) *aff'd*, 41 B.R. 903 (N.D.N.Y. 1984), the court granted the claimants request to order the turnover of pre-petition collection of the debtor's accounts receivable. The court reasoned that "[t]he mere mechanical act of collection and application of the Debtor's

accounts receivable to an outstanding loan owing from the Debtor does not remove the statutory trust 'res' identity of those funds." *Id.*

The funds to be collected from the Accounts Receivable are not estate property; they are held in trust for the benefit of the Cattle Sellers.[4] Because BankUnited has no rights to the trust property unless and until the Cattle Sellers are paid in full, BankUnited cannot set off the trust property, and BankUnited would ultimately be liable to the Cattle Sellers in the event it *did* apply the proceeds from the Debtor's Accounts Receivable to the LOC. For these reasons, the Court should grant the Debtor the relief requested.

### *Florida Law Also Imposes Penalties on Non-payment*

In addition to the PASA, Florida also has statutory provisions in place to protect cattle sellers from non-payment. Section 534.54 of the Florida Statutes governs "meat processors," which the Debtor qualifies as. *See* Fla. Stat. § 534.54(1)(b) (defining "meat processor" as "a person, corporation, association, or other legal entity engaged in the business of slaughtering cattle or hog"). The statute contains the restrictions on payment for cattle similar to those found in the PASA—within one business day of delivery of the cattle or determination of "grade and yield." Fla. Stat. § 534.54(2)(a). Additionally, § 534.54 contains stiff penalties for a processor's failure to pay, imposing 12% damages, interest at the highest legal rate, and attorney fees. Fla. Stat. § 534.54(3).

Section 534.54 also grants unpaid livestock sellers lien rights in the "animal and its carcass, all products therefrom, and proceeds thereof to secure all or a part of its sales price." Fla. Stat. § 534.54(4)(a). Such lien rights automatically attach and perfect upon delivery of the livestock to

---

[4] The same rule applies with respect to the Perishable Agricultural Commodities Act. Proceeds from the sale of such commodities are not property of the estate. *See, e.g.*, *In re Chipwich, Inc.*, 165 B.R. 135 (Bankr. S.D.N.Y. 1994); *In re Super Spud, Inc.*, 77 B.R. 930 (Bankr. M.D. Fla. 1987).

the purchaser. Fla. Stat. § 534.54(4)(b). These attachment and perfection provisions may provide the Cattle Sellers with lien rights superior to BankUniteds' lien rights, in addition to their statutory trust rights.

The Debtor's desire to comply with the provisions of Section 534.54 of the Florida Statutes and avoid the stiff penalties contained therein provide yet another reason for the Court to grant the Debtor the relief requested in this Motion.

### *Conclusion*

Based on the foregoing, the Debtor seeks an order allowing the Outstanding Cattle Checks to clear the BankUnited Account and prohibiting BankUnited from dishonoring those checks presented for payment post-petition. The Debtor is not asking the Court to compel BankUnited to extend credit to honor the checks or payments; the inflow of collections on Accounts Receivable—which is "trust" property under the PASA—will satisfy the amounts owed to the Cattle Sellers.

In the end, the Debtor is fully confident *all* creditors will receive 100% payment on their valid claims in this case after a sale. The Debtor simply seeks to provide payment to the Cattle Sellers now, rather than have its payments dishonored and require the Cattle Sellers to file trust claims. In addition to the hard penalties under Section 534.54 of the Florida Statutes, delaying payment to the Cattle Sellers could harm the Debtor's reputation in the market and damage the Debtor's going-concern value. What is more, nonpayment of the Cattle Sellers may jeopardize the standing of the Debtor's USDA license. If the USDA flagged the Debtor's license, the resultant administrative hurdles would further undermine the Debtor's value to an interested buyer that may wish to resume operations in the near future.

**<u>Basis for Emergency Relief</u>**

The facts set out in thus motion establish the need for an emergency hearing.  If Outstanding Cattle Checks are dishonored by BankUnited, the Debtor will face immediate harm in the form of penalties and potential damage to going-concern value as described above.

WHEREFORE, the Debtor respectfully request that this Court enter an order granting this Motion and (i) authorizing the Debtor to pay prepetition amounts due to the Cattle Sellers, including allowing the Outstanding Cattle Checks to clear; and (ii) prohibiting BankUnited from dishonoring the Outstanding Cattle Checks upon presentment; and (iii) granting such other and further relief as is just and proper.

<div style="margin-left: 40%;">

*/s/ Harley E. Riedel*               
Harley E. Riedel (FBN 183628)
Matthew B. Hale (FBN 0110600)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
Telephone:  (813) 229-0144
Fax:  (813) 229-1811
Emails: hriedel@srbp.com; mhale@srbp.com
Attorneys for Debtor

</div>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that true and correct copies of the foregoing *Emergency Motion for Entry of an Order Authorizing Payment of Cash Sellers of Livestock from Statutory Trust Funds Pursuant to Section 196 of the Packers and Stockyards Act, 7 U.S.C. § 196 and Other Applicable Law* have been furnished on this 21st day of March, 2016, by either the Court's CM/ECF system or U.S. Mail**,** to:

Office of the U.S. Trustee
20 Largest Unsecured Creditors


 /s/ *Harley E. Riedel*
Harley E. Riedel

Airgas Dry Ice
P.O. Box 951873
Dallas, TX 75395-1873

Americold Logistics, LLC
Post Office Box 78459
Milwaukee, WI 53278

Bemis Company, Inc.
24815 Network Place
Chicago, IL 60673-1248

CLC Transporting, Inc.
8209 New York Ave.
Newtown, MO 64667

Fidelity Paper & Supply Corp.
P.O. Box 376
East Hanover, NJ 07936

G&K Services
P.O. Box 842385
Boston, MA 02284-2385

Hillshire Brands
3301 Rider Trail S.
Earth City, MO 63045

Industry Insights & Solutions
1040 Big Moss Lake Rd.
Lutz, FL 33558

Marten Transport Services, Ltd.
P.O. Box SDS 12-1733
Minneapolis, MN 55486-1733

Motion Industries, Inc.
P.O. Box 504606
Saint Louis, MO 63150

QVest
1101 8th St., Unit 1
Greeley, CO 80631

Rochester Midland Corp.
P.O. Box 64462
Rochester, NY 14624-6862

Silliker, Inc.
3155 Paysphere Circle
Chicago, IL 60674-3155

Stauffer Glove & Safety
P.O. Box 45
Red Hill, PA 18076

Suburban Propane
412 S. Main St.
Wildwood, FL 34785

Time Definite Services, Inc.
1360 Madeline Lane
Elgin, IL 60124

USDA Food Safety & Inspections
US Bank - FSIS Lockbox
Saint Louis, MO 63197-9001

USDA Grading and Verification Division
Acct. # 3098195
Saint Louis, MO 63179-0304

Spiritas Foods
7008 Yamini Dr.
Dallas, TX  75230

R.A. Jones & Co.
P.O. Box 3848
Davenport, IA  52808-3848

# EXHIBIT A

judy    Date: 03/21/16  7:48 AM                    CENTRAL BEEF IND. LLC                                    Page    1
                                        OUTSTANDING CHECKS REPORT - ACCOUNT 1017

| Check Number | Check Date | Vendor | Vendor Name | Check Amount | |
|---|---|---|---|---|---|
| 139549 | 08/26/14 | 1RUNND | Running Dog Ranch | 857.60 | |
| 145165 | 07/14/15 | 1GRAHA | Graham Livestock Comm. LLC | 11417.73 | |
| 145459 | 07/24/15 | 2ALLLA | Larry Allen | 186.93 | CM |
| 147673 | 11/18/15 | 1MILCL | Christopher Milton and/or | 882.96 | |
| 148965 | 01/27/16 | 1KINGE | King Enterprise | 1542.92 | |
| 149065 | 01/29/16 | 5CONKI | Kim Conaway | 599.21 | |
| 149293 | 02/09/16 | 1RODGL | Glen Rodgers | 272.54 | |
| 149641 | 02/24/16 | 1AMDBA | American Dairyco | 91932.12 | |
| 149729 | 02/26/16 | 5CONKI | Kim Conaway | 1193.70 | CM |
| 149807 | 03/02/16 | 1MCART | McArthur Farms | 43347.89 | |
| 149829 | 03/03/16 | 1MCART | McArthur Farms | 38646.61 | |
| 149832 | 03/03/16 | 1SMITE | Teresa Smith | 619.50 | |
| 149837 | 03/04/16 | 1CRERI | Crews, Rick | 5267.83 | |
| 149841 | 03/04/16 | 1ELPAR | E. L. Partin Ranch Inc. | 4516.53 | |
| 149845 | 03/04/16 | 1MCART | McArthur Farms | 5526.91 | |
| 149874 | 03/04/16 | 3SKINI | Skint LLC | 900.00 | FGT |
| 149897 | 03/08/16 | 1CASJA | James Cason | 1964.48 | |
| 149933 | 03/09/16 | 1AMDBA | American Dairyco | 41866.59 | |
| 149934 | 03/09/16 | 1AMDBR | American Dairyco | 27841.27 | |
| 149935 | 03/09/16 | 1AMEBE | American Dairyco | 22112.12 | |
| 149969 | 03/10/16 | 1ALBRI | Albritton & Sons | 27677.49 | |
| 149977 | 03/10/16 | 1FLORB | Florida Beef Council, Inc. | 2609.00 | BEEF Council |
| 149985 | 03/10/16 | 1MCART | McArthur Farms | 68466.95 | |
| 149998 | 03/11/16 | 1BARRD | Barrington Dairies LLC | 42088.46 | |
| 150007 | 03/11/16 | 1MCART | McArthur Farms | 6079.87 | |
| 150008 | 03/11/16 | 1PIEDM | Alliance Grazing Group | 6241.43 | |
| 150014 | 03/11/16 | 2BALRO | Ronnie Baltz | 639.20 | CM |
| 150017 | 03/11/16 | 2THRWO | Woody Thrasher Cattle Co.,Inc | 127.28 | CM |
| 150029 | 03/11/16 | 3JWSAU | J. W. Saul Livestock Hauling | 6200.00 | FGT |
| 150037 | 03/11/16 | 3SAMPL | Nathan R. Samples | 2790.00 | FGT |
| 150039 | 03/11/16 | 3STEIN | Dan Steindler | 2400.00 | FGT |
| 150049 | 03/14/16 | 1LIVIN | Livingston Livestock | 22528.09 | |
| 150056 | 03/14/16 | 1NEWCA | New Cambria L/S Market LLC | 8426.73 | |
| 150059 | 03/15/16 | 1GRORO | Roger A. Groover | 291.50 | |
| 150063 | 03/15/16 | 1ROLAL | Albert Roller | 6907.85 | |
| 150065 | 03/16/16 | 1AMDBR | American Dairyco | 6383.77 | |
| 150066 | 03/16/16 | 1AMEBE | American Dairyco | 7518.73 | |
| 150067 | 03/16/16 | 1BAKKE | Ken Baker | 2609.74 | |
| 150068 | 03/16/16 | 1COMLY | Lyle Combee | 3089.51 | |
| 150069 | 03/16/16 | 1DAKIN | Jerry Dakin | 34797.77 | |
| 150070 | 03/16/16 | 1FAMIL | Family Tree Enterprises | 75710.85 | |
| 150071 | 03/16/16 | 1HANJO | John Haney | 467.46 | |
| 150072 | 03/16/16 | 1KEMP2 | Kempfer Cattle | 2662.04 | |
| 150073 | 03/16/16 | 1MCABR | McAdams Dairy | 6429.34 | |
| 150074 | 03/16/16 | 1NOLJO | Johnny Nolan | 9186.07 | |
| 150075 | 03/16/16 | 1ROCKF | Rocking F Ranch | 4990.02 | |
| 150076 | 03/16/16 | 1ROLAL | Albert Roller | 2314.16 | |
| 150077 | 03/16/16 | 1SHOOP | Shoop Cattle Co., LLC | 1337.96 | |
| 150078 | 03/16/16 | 1THECO | The Cowgirl Company | 2544.72 | |
| 150079 | 03/16/16 | 1TAYRE | Rene Taylor | 351.80 | |
| 150080 | 03/17/16 | 1ALLIA | Alliance Dairies | 12634.24 | |
| 150081 | 03/17/16 | 1AMDBA | American Dairyco | 40587.19 | |
| 150082 | 03/17/16 | 1BROOK | Brooksco Dairy | 67354.49 | |
| 150083 | 03/17/16 | 1CATHA | Cattlemen's Livestock Auction | 126.00 | FEED |
| 150084 | 03/17/16 | 1CONKI | Kim Conaway | 5274.39 | |
| 150085 | 03/17/16 | 1HARDI | Hardin County Stockyards, Inc. | 100.00 | FEED |
| 150086 | 03/17/16 | 1KEMPF | Kempfer Cattle | 73110.41 | |

judy    Date: 03/21/16  7:48 AM                CENTRAL BEEF IND. LLC                                    Page    2
                                    OUTSTANDING CHECKS REPORT - ACCOUNT 1017

| Check Number | Check Date | Vendor | Vendor Name | Check Amount | |
|---|---|---|---|---|---|
| 150087 | 03/17/16 | 1LAFAY | Lafayette Dairy LLC | 30930.09 | |
| 150088 | 03/17/16 | 1MCART | McArthur Farms | 36669.35 | |
| 150089 | 03/17/16 | 1MCDBR | Brooks McDowell | 356.48 | |
| 150091 | 03/18/16 | 1BARRD | Barrington Dairies LLC | 39097.84 | |
| 150092 | 03/18/16 | 1CATTR | Cattle Tree | 31426.15 | |
| 150094 | 03/18/16 | 1DOUGL | Douglas County Livestock Auc | 28.00 | FEED |
| 150095 | 03/18/16 | 1LESTE | D. W. Lester & Son Inc | 6712.56 | |
| 150096 | 03/18/16 | 1OZARK | Ozarks Regional Stockyard | 1016.00 | FEED |
| 150097 | 03/18/16 | 1STEIN | Steindler Cattle Co. | 38228.58 | |
| 150098 | 03/18/16 | 2DEMLA | Lanny DeMott | 256.69 | CM |
| 150100 | 03/18/16 | 3CONKI | Kim Conaway | 325.00 | FGT |
| 150101 | 03/18/16 | 3DEEPC | Deep Creek Transit LLC | 2000.00 | |
| 150102 | 03/18/16 | 3DIAME | Kimberli Ewing | 2400.00 | |
| 150103 | 03/18/16 | 3DIMMI | Obert W. Dimmitt | 1850.00 | |
| 150104 | 03/18/16 | 3EVANS | Evans Hooks Cattle Co., Inc | 2400.00 | |
| 150105 | 03/18/16 | 3GLWAL | G.L. Walker Inc | 1759.00 | |
| 150107 | 03/18/16 | 3HARRI | Harrison Boone LLC | 2000.00 | |
| 150108 | 03/18/16 | 3HELWI | William Heltzel Trucking | 1550.00 | |
| 150109 | 03/18/16 | 3JWSAU | J. W. Saul Livestock Hauling | 5950.00 | |
| 150110 | 03/18/16 | 3KJTRU | K & J Livestock Hauling Inc. | 1800.00 | |
| 150111 | 03/18/16 | 3LAKEE | Lake Erie Corp.,Inc. | 1600.00 | |
| 150112 | 03/18/16 | 3NEURO | Ron Neufeld | 4795.00 | |
| 150113 | 03/18/16 | 3PHIJE | Jeff Phillips, Inc. | 6950.00 | |
| 150114 | 03/18/16 | 3RBROL | R. Brown Logistics, Inc. | 3200.00 | |
| 150115 | 03/18/16 | 3RONSI | Ron Sizemore Trucking,Inc. | 3500.00 | |
| 150116 | 03/18/16 | 3RTSLI | Randall Sorrell | 2200.00 | |
| 150117 | 03/18/16 | 3STEIN | Dan Steindler | 2400.00 | |
| 150118 | 03/18/16 | 3TDSLI | TD'S Livestock Express, LLC | 2200.00 | |
| 150119 | 03/18/16 | 5CONKI | Kim Conaway | 1110.33 | CM |
| 150120 | 03/18/16 | 5REEDJ | Junior Reed | 1173.62 | CM |
| 150121 | 03/18/16 | 3CIRVS | Circle VS Trucking, Inc. | 1850.00 | FGT |
| 150122 | 03/18/16 | 3GODWI | TJ Godwin Enterprises | 6767.50 | FGT |
| | | | TOTAL | 1109052.14 | |

Cattle Purchases
$) 1030698.89

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                          Chapter   11

CENTRAL BEEF IND., LLC                          Case No.  8:16-bk-02366

      Debtor.

_____/

**ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN
ORDER AUTHORIZING PAYMENT OF CASH SELLERS OF LIVESTOCK
FROM STATUTORY TRUST FUNDS PURSUANT TO SECTION 196 OF THE
PACKERS & STOCKYARDS ACT, 7 U.S.C. § 196, AND OTHER APPLICABLE LAW**

THIS CASE came on for hearing on March _____, 2016 at _____ a.m. on the Debtor's

Emergency Motion for Entry of an Order Authorizing Payment of Cash Sellers of Livestock

from Statutory Trust Funds Pursuant to Section 196 of the Packers and Stockyards Act, 7 U.S.C.

§ 196 and Other Applicable Law  (the "**Motion**").  For the reasons stated in open court, which

shall constitute the opinion of the Court, the Court finds the Motion is well taken and due to be

granted.  Accordingly, it is

**ORDERED:**

1.      The Motion is granted.

2.     All monies or proceeds received from collections of the Debtor's Accounts Receivable held or deposited in the BankUnited Account are held in trust by the Debtor for the benefit of unpaid cattle sellers (the "**Cattle Sellers**"), to the extent of the Debtor's debt to such Cattle Sellers, pursuant to the Packers and Stockyards Act,  7 U.S.C. § 196.

3.     The Debtor is authorized to allow checks to clear from the BankUnited Account in payment for pre-petition amounts owed to any Cattle Sellers.

4.     The Debtor is authorized to make payment on pre-petition debts to the Cattle Sellers from the BankUnited Account.

5.     This order does not require BankUnited to advance funds to the Debtor to cover checks presented, but BankUnited shall honor any checks presented for payment from the BankUnited Account if that account has funds available from deposits made by the Debtor.

6.     Consistent with the automatic stay of 11 U.S.C. § 362, BankUnited is prohibited from "sweeping" the Debtor's BankUnited Account or otherwise exercising setoff against funds held in the BankUnited Account until further order from this Court.

*Attorney Harley E. Riedel is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within 3 days of entry of the order.*